UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Mansfield Heliflight, Inc.,

       Plaintiff,

       v.                            Civil Action No. 2:12-CV-46

Heli-One Canada Inc., and
Heli-One (Norway) SA.,

       Defendants.

## OPINION AND ORDER
(Doc. 9)

Presently before the Court is Defendant Heli-One Canada Inc.'s motion to dismiss

under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.  (Doc. 9.)  For the reasons

stated below, the motion to dismiss is DENIED.

## Factual Background

For the purposes of the motion to dismiss, all facts taken from Plaintiff's pleadings

and affidavits are assumed to be true and all inferences drawn therefrom must be drawn

in Plaintiff's favor.  *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir.

1985).

## I.      The Parties

Plaintiff Mansfield Heliflight, Inc. ("Mansfield") is a Vermont corporation, with

its principal place of business in Milton, Vermont.  (Doc. 7 at 3.)  Defendant Heli-One

Canada Inc. ("Heli-One Canada") is a Canadian corporation with its principal place of

business in Richmond, BC, Canada.  (Doc. 9-1, Hill Decl. ¶ 2.)  Defendant Heli-One (Norway) SA ("Heli-One Norway") is a Norwegian company with its principal place of business in Sola, Norway.  (*Id*. at ¶ 3.)  Defendants are two distinct and separate legal entities.  (*Id*. at ¶ 4.)

Heli-One is an operating division of parent company CHC Helicopter Corporation.  (Doc. 15-1.)  CHC was purchased by First Reserve Corporation in 2008 (*id.*), a private equity firm located in Greenwich, Connecticut.  (Doc. 15-2.)  Heli-One describes itself in the following way in a recent press release: "Heli-One is headquartered in Delta, British Columbia, Canada; with maintenance, repair and overhaul facilities in Delta, BC, Stavanger, Norway, and Fort Collins, Colorado."  (Doc. 15-4.)  Similarly, on its website the company describes its Canadian office as the "Heli-One Head Office" and its Norway office as the "Heli-One Norway Office."  (Doc. 15-3.)  At oral argument on the instant motion, Heli-One Canada confirmed that the two corporations – Heli-One Canada and Heli-One Norway – are owned by the same parent company.

## II.    Facts and Procedural Background

This case arises from the failure of Defendants to pay Plaintiff for helicopter parts.  Andrew Nevison, Sales Director at Heli-One Canada, met Eric Chase, President of Mansfield Heliflight, at a convention in Orlando, Florida in March 2011.  (Doc. 18-3.)  Nevison introduced Chase to Leif Torkelson, of Heli-One Norway, with whom Chase

would begin negotiations for the sale of helicopter parts and engines.  (*Id.*)[1]  Specifically, Plaintiff commenced negotiations with Torkelson – whose e-mail signature identified him as the "Director, Supply Chain Europe" for "Heli-One"[2] (Doc. 15-8) – over the sale of two engines and other parts from a Eurocopter AS 332 L2 "Super Puma."  (Doc. 7 at 4.) After a significant amount of negotiation, the parties reached an agreement on May 9, 2011.  (*Id.* at 4.)  The next day, Plaintiff drafted an invoice reciting the agreed-to price: $1,564,000.  (Doc. 9-6.)  The invoice identified the party to be billed as "Heli-One."  (*Id.*)

The bill was never paid.  On May 17, 2011, Torkelson e-mailed Chase stating that he was experiencing internal delays in getting final approval and that he expected a decision "by early June."  (Doc. 7 at 4.)  On June 3, 2011, Torkelson e-mailed Chase and provided the shipping address in Norway in the event that a deal was reached.  (*Id.*)  On June 8, 2011, Torkelson wrote Chase stating that he had just spoken with the "head office" in Vancouver about the approval for financial expenditure and stated that he expected a response by the end of that week.  (*Id.* at 4-5; Doc. 15-11.)  Over the next few days, Torkelson continued to e-mail Chase, requesting that the engines be sent because he believed final approval was imminent, that "indications [are] positive," and then asking for a price only for the engines (without the parts).  (Doc. 7 at 5.)  After further

---

[1]  Nevison had no role in the subsequent negotiations, telling Chase, after he reached out to Nevison on multiple occasions during the delay in payment, that Torkelson was the correct person to correspond with.  (Doc. 18-3.)

[2]  Although Torkelson's e-mail signature described him generally as an employee of "Heli-One," he was in fact employed at all relevant times by Heli-One Norway.  (Doc. 9-1, Hill Decl. ¶ 5.)

3

negotiation, a price of $1,300,000 was agreed upon for just the engines that were the subject of the earlier agreement.  (*Id*.)

On July 6, 2011, Nevison informed Chase that Jerry Rockstroh, Executive Vice President and Chief Procurement Officer of Heli-One Canada, would be the "final decision maker."  (Doc. 7 at 5.)  On July 13, 2011, Gary McKown, also of Heli-One Canada, asked Chase to provide information regarding the status of the deal.  (*Id*.)  In response, Chase provided all prior correspondence between Chase and Torkelson.  (*Id*.)  On July 25, 2011, Torkelson wrote Chase to confirm that the engines had arrived at the Norway facility.  (*Id*.)  On August 2, 2011, Torkelson wrote Plaintiff stating that he would be leaving Heli-One and that Ken Vidar Pedersen would be handling the purchase after he left.  (*Id*. at 6.)  When Plaintiff e-mailed Pedersen to confirm that the deal was still on, Pederson stated that he was unaware of the deal but would discuss it with Rockstroh.  (*Id*.)  After Torkelson left the company, Chase was also told that Rockstroh would be handling the transaction.  (Doc. 15-6, Chase Decl. ¶ 12.)  Considerable correspondence ensued between Rockstroh and Chase regarding the matter, including repeated unfulfilled promises to provide updates on its status, culminating in a January 2012 telephone call from Chase to Rockstroh in which Chase demanded resolution of the matter in light of the fact that the engines had been in Norway for six months.  (Doc. 7 at 8.)  On February 8, 2012, Chase informed Rockstroh that the matter would be turned over to its legal counsel because it did not feel as though Defendants had acted in good faith.  (*Id*. at 9.)  On February 12, 2012, Chase tried to meet with Rockstroh in person while they were both in Dallas at a convention, but to no avail.  Rockstroh responded that his

schedule was "back to back" during the convention, and noted that it was "unfortunate we could not come to a viable agreement on this offer you solicited to us."  (Doc. 15-9.) As the foregoing demonstrates, between August 2011 and February 2012, all communication regarding the purchase of the engines took place between Plaintiff and Rockstroh.  (Doc. 15-6, Chase Decl. ¶ 13.)

Plaintiff filed its Amended Complaint on April 20, 2012,[3] alleging various breach of contract, quasi-contract, and tort claims against both Heli-One Canada and Heli-One Norway.[4]  (Doc. 7.)  Defendant Heli-One Canada filed the instant motion to dismiss for lack of personal jurisdiction on May 30, 2012.  (Doc. 9.)

## III.    Other Contacts Between Heli-One Canada and Vermont

Other than communication regarding the sale of the parts and engines forming the basis of this cause of action, Heli-One Canada and employees of Mansfield have had only "occasional communications" about potential sales opportunities.  (Doc. 9-1, Hill Decl. ¶ 7.)  No transactions have resulted from these communications, and Heli-One Canada has no other business relationships with customers in Vermont.  (*Id*. at ¶¶ 6-9.)  In addition, Heli-One Canada has no physical presence in Vermont, has no staff in Vermont, has no bank accounts in Vermont, has not derived revenue or paid taxes in Vermont, is not registered to do business in Vermont, and does not have a registered agent to accept service on its behalf in Vermont.  (*Id*. at ¶¶ 11-16.)

---

[3]  Plaintiff's original complaint, filed March 6, 2012, named CHC Helicopter Corporation and Heli-One Inc. as Defendants.  (Doc. 1 at 1.)

[4]  Specifically, Plaintiff alleged breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, promissory estoppel, fraud, negligent misrepresentation, and conversion.  (Doc. 7 at 11-17.)

Plaintiff, however, also points out two recent contacts.  In July 2011, Ricky Reno, Sales Director for Heli-One American Support, LLC, visited Mansfield in Vermont for the purpose of soliciting business.  (Docs. 15-14; 18-2, Hill Decl. ¶ 3.)  Subsequently, in June 2012, Brit McDermett, a member of the sales team employed by Heli-One American Support, LLC, solicited Mansfield employees in an e-mail, asking to visit Mansfield's "shop" during a trip to the area "in the next few weeks."  (Docs. 15-10; 18-1, McDermett Decl. ¶ 1.)  McDermett never visited Mansfield.  (Doc. 18-1, McDermett Decl. ¶ 6.)

## Discussion

### I.  Personal Jurisdiction

#### A.  Legal Standard

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden to demonstrate that the defendant has sufficient contact with the forum state to give the court jurisdiction over the person of the defendant.  *Country Home Products, Inc. v. Schiller-Pfeiffer, Inc.*, 350 F. Supp. 2d 561, 566-67 (D. Vt. 2004).  Where, as here, no evidentiary hearing has been held on the motion to dismiss and no discovery has occurred, the plaintiff need make only a prima facie showing that jurisdiction exists notwithstanding a controverting presentation by the defendant.  *Hoffritz*, 763 F.2d at 57.[5]

---

[5] "Eventually, of course, the plaintiff must establish jurisdiction by a preponderance of the evidence, either at a pretrial evidentiary hearing or at trial.  But until such a hearing is held, a prima facie showing suffices, notwithstanding any controverting presentation by the moving party, to defeat the motion."  *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981).

In general, personal jurisdiction analysis is a two-part inquiry.  First, the court must determine whether the law of the state in which it sits would permit personal jurisdiction over the defendant, *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997), and, second, the court must determine whether the Due Process Clause of the Fourteenth Amendment permits the exercise of personal jurisdiction over the defendant. *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945).  In Vermont, however, these are coterminous inquiries.  The Vermont Supreme Court has interpreted the state's long-arm statute, 12 V.S.A. § 913(b), [6] to permit the assertion of jurisdiction to the "full extent permitted by the Due Process Clause" of the Federal Constitution. *Northern Aircraft v. Reed*, 154 Vt. 36, 40 (1990).  Stated differently, under Vermont law the exercise of personal jurisdiction is permissible so long as it is constitutional.  As applied here, this Court may exercise personal jurisdiction over any defendant properly subject to service of process under the Vermont long-arm statute, that is, any defendant who has sufficient contact with Vermont that the Court's exercise of jurisdiction does not violate principles of due process.  "Thus, the Court can proceed to an application of the [D]ue [P]rocess [C]lause." *Ben & Jerry's Homemade, Inc. v. Coronet Priscilla Ice Cream Corp.*, 921 F. Supp. 1206, 1209 (D. Vt. 1996).

The Due Process Clause of the Fourteenth Amendment limits the power of a court to assert personal jurisdiction over a non-resident defendant.  For an assertion of

---

[6] 12 V.S.A. § 913(b) provides: "Upon the service [of process on a party outside the state], and if it appears that the contact with the state by the party or the activity in the state by the party or the contact or activity imputable to him is sufficient to support a personal judgment against him, the same proceedings may be had for a personal judgment against him as if the process or pleading had been served on him in the state."

jurisdiction to be consistent with due process, it must satisfy both a "minimum contacts" test and a "reasonableness" inquiry.  *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996).  With respect to minimum contacts, the plaintiff must demonstrate that the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction over the defendant.  *See International Shoe*, 326 U.S. at 316.  "[M]inimum contacts must have a basis in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'"  *Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County*, 480 U.S. 102, 109 (1987) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).  "Intentional and affirmative action by the nonresident defendant in the forum state is the key to personal jurisdiction."  *Ben & Jerry's*, 921 F. Supp. at 1210.

For the purposes of the minimum contacts test, courts draw a distinction between "specific" and "general" jurisdiction.  Specific (or "case-linked," *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)) jurisdiction exists "when a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum."  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984).  General (or "all-purpose," *Goodyear*, 131 S. Ct. at 2851) jurisdiction, on the other hand, "is based on the defendant's general business contacts and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts."  *Metropolitan Life*, 84 F.3d at 567-68; *see also Grand River Enterprises Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 166 (2d Cir. 2005)

("No single event or contact connecting defendant to the forum state need be demonstrated; rather, the *totality of all defendant's contacts* with the forum state must indicate that the exercise of jurisdiction would be proper."). Because the contacts that establish general jurisdiction are unrelated to the events giving rise to the suit, courts impose a "more stringent" version of the minimum contacts test for general jurisdiction than for specific jurisdiction. *Metropolitan Life*, 84 F.3d at 568. Specifically, to establish general jurisdiction the plaintiff is required to show contact that is "continuous and systematic in nature," *Bechard v. Constanzo*, 810 F. Supp. 579, 583 (D. Vt. 1992), so as to render the defendant "essentially at home in the forum state," *Goodyear*, 131 S. Ct. 2851.

Once this "minimum contacts" test is satisfied, the "reasonableness" inquiry requires the court to decide "whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King*, 471 U.S. at 476 (quoting *International Shoe*, 326 U.S. at 320). In making this determination, courts look to "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies." *Burger King*, 471 U.S. at 477 (internal quotations omitted). "While the exercise of jurisdiction is favored where the plaintiff has made a threshold showing of minimum contacts at the first stage of the inquiry, it may be defeated where the defendant presents 'a compelling case that the presence of some other considerations would render

jurisdiction unreasonable.'" *Metropolitan Life*, 84 F.3d at 568 (quoting *Burger King*, 471 U.S. at 477).

**B.      Personal Jurisdiction over Heli-One Canada**

Plaintiff presents two theories of personal jurisdiction: (1) the nature of the contacts between Heli-One Canada and the State of Vermont provide the Court with general jurisdiction over Heli-One Canada; and (2) the contacts at issue in this case establish specific jurisdiction over Heli-One Canada because contacts with Heli-One Norway should be attributed to Heli-One Canada where the companies hold themselves out as an integrated whole.  The Court addresses each theory in turn.

**1.      General Jurisdiction**

The contacts between Heli-One Canada and Vermont are insufficient to establish this Court's general jurisdiction over Heli-One Canada.  Heli-One Canada has no office, bank account, or employees in Vermont.  Heli-One Canada has never derived revenue or paid taxes in Vermont, is not registered to do business in Vermont, and has no agent to accept service on its behalf in Vermont.  Plaintiff alleges only two contacts between Heli-One Canada and Vermont beyond those forming the basis of the instant case: (1) an e-mail from a member of the Heli-One sales team to Plaintiff, and (2) a visit from a sales director to Plaintiff's facility in Milton.  Setting aside that neither of these employees were actually employed by Heli-One Canada, such contacts are insufficiently "continuous and systematic" to warrant an assertion of general jurisdiction.  *Goodyear*, 131 S. Ct. at 2851 (quoting *International Shoe*, 326 U.S. at 317).  "[C]onduct of single or isolated items of activities in a state in the corporation's behalf are not enough to subject

it to suit on causes of action unconnected with the activities there." *International Shoe*, 326 U.S. at 317. The conduct at issue here – two isolated sales attempts, one via e-mail and one in person – do not rise to the level of conduct held sufficient to establish general jurisdiction in past cases. *See Devost Enterprises, Inc. v. Allstate Can Corp.*, No. 1:09-CV-276, 2010 WL 1489981, at *3 (D. Vt. Apr. 12, 2010) (concluding that defendant's two trips to Vermont on unrelated business were not of sufficient continuous or systematic nature to give rise to general jurisdiction); *see also Metropolitan Life*, 84 F.3d at 572-73 (finding minimum contacts sufficient to support general jurisdiction in a "close case" in which the defendant had $4 million in Vermont sales, registered to do business in Vermont, maintained relationships with dealers and builders in Vermont, provided advertising and support to Vermont residents, and deliberately targeted Vermont for sales). [7]

No sale or purchase, other than that at issue in this case, has ever taken place between Heli-One Canada and individuals or companies in Vermont.[8] Even had such a purchase or sale occurred, "mere purchases, *even if occurring at regular intervals*, are not

---

[7]  The two cases relied upon by Plaintiff in arguing that this Court should assert general jurisdiction are readily distinguishable. In *Sollinger v. Nasco Intern., Inc.*, 655 F. Supp. 1385 (D. Vt. 1987), this Court held that an exercise of general jurisdiction was appropriate where a Wisconsin corporation purposefully directed its sales toward Vermont in distributing catalogs throughout the state via direct mailings and thereby selling its products in Vermont. Though a limited part of the company's business, Vermont sales were an ongoing and systematic part of the company's general sales, and thus supported an exercise of general jurisdiction. Similarly, in *Seetransport Wiking Trader v. Navimpex Centrala Navala*, 989 F.2d 572 (2d Cir. 1993), the defendant, a Romanian shipbuilding contractor, had a continuous arrangement involving the solicitation of business in the forum state, New York, which the court held justified its assertion of personal jurisdiction.

[8]  Plaintiff has not argued that Defendant's maintenance of an interactive website accessible in Vermont gives rise to general jurisdiction. Even if it had, this argument would fail. *See Revision Military, Inc. v. Balboa Mfg. Co.*, No. 5:11-CV-149, 2011 WL 3875624, at *7 (D. Vt. Aug. 31, 2011) (rejecting identical argument).

enough to warrant a State's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions." *Helicopteros*, 466 U.S. at 418 (emphasis added); *compare Perkins v. Benguet Consol. Min. Co.*, 342 U.S. 437 (1952) (exercise of general jurisdiction over Philippine corporation appropriate in Ohio where company's affairs were managed during occupation of Philippines during World War II), *with Helicopteros*, 466 U.S. at 408 (Colombian corporation's contacts with Texas – which included one trip to Texas for purpose of negotiating contract, acceptance of checks drawn on Texas bank, and purchases of helicopters and equipment from Texas manufacturer – insufficient to establish general jurisdiction in Texas court). The contacts between Heli-One Canada and Vermont do not rise to the level such that, "having enjoyed the benefits of conducting business in Vermont, [Heli-One Canada] should bear the corresponding burden of submitting to Vermont's courts." *Allen-Sleeper v. Fed. Exp. Corp.*, No. 5:09-cv-151-cr, 2010 WL 3323660, at *4 (D. Vt. Apr. 14, 2010). Accordingly, exercise of this Court's general jurisdiction would violate principles of due process.

### 2.    Specific Jurisdiction

The Court next considers whether it may exert specific jurisdiction over Heli-One Canada.  Heli-One Canada maintains that the Court lacks specific jurisdiction over it because Plaintiff negotiated and reached an agreement with Heli-One Norway, an entirely distinct legal entity, over the purchase of goods from Plaintiff.  By its estimation, Heli-One Canada only became tangentially involved in the agreement on the back end, after Plaintiff chose to reach out to certain of its employees when payment from Heli-One

Norway was not forthcoming.  Such minimal involvement, according to Heli-One Canada, should not suffice to provide the Court with specific jurisdiction.  Plaintiff counters that, up until the filing of the motion to dismiss, Heli-One Canada and Heli-One Norway operated as, and held themselves out as, one integrated entity.  As a consequence, Plaintiff argues that this Court should disregard formalities and treat the two companies as indistinct for the purposes of an assessment of the requisite contacts for specific jurisdiction purposes.

Given Plaintiff's arguments, the Court must consider two distinct jurisdictional questions: (1) whether Heli-One Norway's contacts with Plaintiff can be attributed to Heli-One Canada[9]; and, (2) if so, whether those contacts, under *International Shoe* and its progeny, are sufficient to establish specific jurisdiction over Heli-One Canada.

Where, as here, the claim is that a foreign corporation (Heli-One Canada) is present in Vermont because of the activities of another related company (Heli-One Norway), the mere existence of a relationship between the two companies does not establish the presence of the foreign corporation in the state.  *See Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir. 1984).  Instead, for the activities of one company to permit personal jurisdiction over another, that company must either be an "agent" or a "mere department" of the foreign corporation.  *Koehler v.*

---

[9]  The question presented, precisely stated, is whether the actions of Heli-One Norway *in this case* can be attributed to Heli-One Canada, not whether the two companies are effectively one (and thus merged) for the purposes of jurisdictional analysis.  Under either theory, Heli-One Canada would be responsible for the in-state activities of Heli-One Norway, "but in attribution the responsibility results from causing a separate legal entity to act while in merger there is no separate legal entity at all."  Lea Brilmayer & Kathleen Paisley, *Personal Jurisdiction and Substantive Legal Relations: Corporations, Conspiracies, and Agency*, 74 CALIF. L. REV. 1, 12 (1986).  As a consequence, "[m]erger requires a greater showing of interconnectedness than attribution."  *Id.*

*Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996).  This is a fact-specific inquiry, calling for an examination of the realities of the relationship between the two companies.

In assessing whether one company acts as the agent of another for jurisdictional purposes, "the inquiry should not be limited to traditional alter-ego jurisprudence but should encompass whether or not there is a single functional and organic identity" between the two companies.  *In re Latex Gloves Product Liability Litigation*, No. MDL 1148, 2001 WL 964105, at *3 (E.D. Pa. Aug. 22, 2001).  "Th[is] question should be examined in terms of the legal interrelationship of the entities, the authority to control and the actual exercise of control, the administrative chains of command and organizational structure, the performance of functions, and the public's perception."  *Id*. Under Vermont law, "[t]he court will . . . pierce the corporate veil, where the corporate form has been used to perpetrate a fraud, . . . and also where the needs of justice dictate." *Agway, Inc. v. Brooks*, 173 Vt. 259, 262 (2001).  "[T]he court will look to the facts and circumstances of each case to determine whether the corporate veil should be pierced in the interests of fairness, equity, and the public need."  *Id*. at 263.  The issue is not one of liability, but is instead one of attribution of contacts for jurisdictional purposes, a "less stringent [test] than that for liability."  *Stuart v. Spademan*, 772 F.2d 1185, 1198 n.2 (5th Cir. 1985); *see also Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981).

This case does not lend itself easily to assessment of whether Heli-One Norway is an agent of Heli-One Canada, both because neither company is a wholly-owned subsidiary of the other, *see, e.g.*, *Volkswagenwerk,* 751 F.2d at  120, and because no

14

discovery has yet taken place to determine the extent of the companies' interrelationship, both of which are privately-held.  Although neither company wholly owns the other, contacts of one company can be attributed to another "not only [between] parents and subsidiaries, but also [between] companies that are 'two arms of the same business group,' operate in concert with each other, and enter into agreements with each other that are nearer than arm's length."  *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litigation*, 693 F. Supp. 2d 409, 420 (D. Del. 2010) (quoting *Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.*, 863 F. Supp. 186, 188-89 (D. Del. 1993)).

In the absence of discovery, Plaintiff has made efforts to piece together the nature of the relationship between the two companies based upon publicly-available information.  According to the "Heli-One" website, "Heli-One" is an operating division of CHC Helicopter Corporation.  Based on this information, it appears that Heli-One Canada and Heli-One Norway are both subsidiaries of CHC Corporation.  Heli-One Canada agreed during oral argument that the two entities are owned by the same parent company.  As a result, Plaintiff has made a prima facie case that the "essential" factor of common ownership is satisfied.  *Volkswagenwerk*, 751 F.2d at 120.

With respect to the interrelationship between Heli-One Canada and Heli-One Norway, a significant degree of integration is apparent from the company's public representations.  For example, on its website, "Heli-One" does not distinguish between the corporate formalities of Heli-One Canada and Heli-One Norway, simply identifying its Canadian office as the "Head Office" and the Norwegian office as the "Norway Office."  Heli-One "Around the World," http://heli-one.ca/Around-the-world (last visited

Sept. 14, 2012).  Indeed, Heli-One Canada and Heli-One Norway do not have distinct websites; there is only one website for all of "Heli-One."  Moreover, the company's description of itself in a recent press release reflects the unified image of Heli-One as a single company: "Heli-One is headquartered in Delta, British Columbia, Canada; with maintenance, repair and overhaul facilities in Delta, BC, Stavanger, Norway, and Fort Collins, Colorado."  *See In re Latex Gloves Product Liability Litigation*, 2001 WL 964105, at *4-5 (using press releases and company websites to assess how defendant company holds itself out to the public for the purposes of jurisdictional analysis).  Furthermore, Plaintiff identifies a limited commonality of officers between the two companies.  According to Plaintiff, Lars Landsnes, who serves as the General Manager of Heli-One Norway (Doc. 15-7), is also employed as the Vice President of European operations for Heli-One.  (Doc. 15-5.)  *See Volkswagenwerk*, 751 F.2d at 121 (identifying commonality of officers and the overall "fail[ure] to observe corporate formalities" as a factor in the veil piercing analysis).

The unity reflected in these public pronouncements is borne out by the conduct of Defendants during the negotiation of the agreement forming the basis of this case.  Torkelson's e-mail signature in his exchanges with Chase identified him only as an employee of "Heli-One."  (Doc. 15-8.)  During negotiations and subsequent discussion concerning payment, Chase corresponded both with Torkelson and Nevison, the latter an employee of Heli-One Canada, who never informed Chase that he was employed by a different company altogether.  Chase also engaged in considerable correspondence with Jerry Rockstroh, the Chief Procurement Officer for Heli-One Canada, who was identified

16

in e-mail correspondence with Torkelson as the "final decision maker."  (Doc. 7 at 5.)
By Torkelson's representation in this e-mail, decisionmaking authority over the contract
in question was vested in an individual employed by Heli-One Canada, further
establishing the linkage between the two companies.[10]

Given the interconnectedness of Heli-One Canada and Heli-One Norway, both
generally and in the circumstances of this case, the Court concludes that Plaintiff has
made a prima facie case that the actions of Heli-One Norway should be attributed to Heli-
One Canada for the purposes of assessing the extent of Heli-One Canada's Vermont
contacts as required under personal jurisdiction analysis.[11]  The question remains,
however, whether those contacts are sufficient to give rise to specific jurisdiction.

The fact that an out-of-state party contracts with a Vermont company does not, by
itself, automatically establish sufficient minimum contacts in Vermont to render an
assertion of personal jurisdiction constitutional.  *Burger King*, 471 U.S. at 478.  Instead,
we look to "prior negotiations and completed future consequences, along with the terms
of the contract and the parties' actual course of dealing" to determine whether the
contract in question – here, for the purchase and sale of helicopter engines – indicates that
"the defendant purposefully established minimum contacts within the forum."  *Id*. at 479.

---

[10]  Despite Defendant's argument that the alleged contract had already been formed at the time of
all communications with employees of Heli-One Canada, it bears mention that Plaintiff has not only
brought suit for breach of contract.  It has also raised claims for fraud and negligent misrepresentation,
which arose partly from the alleged conduct of Heli-One Canada employees.

[11]  The Court recognizes that, to a certain extent, Heli-One Canada's arguments concerning
personal jurisdiction reflect factual disagreements over the circumstances giving rise to the Plaintiff's
case.  As stated, the Court cannot indulge such disagreements, and is obliged, at this stage, to construe the
Amended Complaint in Plaintiff's favor and accept the facts stated therein as true.  *See Landoil Resources
Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1990).

"[E]valuation of the jurisdictional significance of a defendant's contract or other business of the forum is not rigid or formalistic, but rather practical and pragmatic." *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008).

While no representative of either Defendant ever physically entered Vermont for the purposes of negotiating the agreement,[12] there is no doubt that Defendants were well aware that they were negotiating with a Vermont-based company. Specifically, the commercial invoice reciting the amount owed to Plaintiff identified "Milton, Vermont" as Plaintiff's place of business on every page. (Doc. 9-6.) Moreover, although the subject of the contract (helicopter engines) was never present in Vermont during the negotiation of the contract, the contract's formation gave rise to a legal obligation in Vermont (the continuing duty to pay a Vermont-based business), as well as a legal benefit in Vermont (the right to enforce the contract). *See Allen-Sleeper,* 2010 WL 3323660, at *4. Thus, the formation of the contract was sufficient to reflect Heli-One Canada's "purposeful availment of the privilege of conducting activities within [Vermont]," *Burger King*, 471 U.S. at 475, and Heli-One Canada has sufficient contacts in Vermont to be subject to this Court's specific jurisdiction.

### 3.   Reasonableness

Having concluded that the exercise of specific jurisdiction is appropriate on the basis of Heli-One Canada's contacts, the Court must assess whether the exercise of

---

[12] "[M]ere absence of physical presence in the state cannot defeat jurisdiction." *Burger King*, 471 U.S. at 476. "In many commercial transactions, the parties' business relationship is conducted entirely through mail, telephone and facsimile, thus 'obviating the need for physical presence within a State in which business is conducted.'" *Ben & Jerry's Homemade, Inc. v. Coronet Priscilla Ice Cream Corp.*, 921 F. Supp. 1206, 1210 (D. Vt. 1996) (quoting *Burger King*, 471 U.S. at 476).

jurisdiction would be reasonable and in keeping with "traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 320.  Preliminarily, the Court notes that, where the requirement of minimum contacts has been met, "only the unusual case" will not satisfy the reasonableness inquiry.  *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1170 (6th Cir. 1988); *see Metropolitan Life*, 84 F.3d at 575 ("dismissals resulting from the application of the reasonableness test should be few and far between").  In making the "reasonableness" assessment, the Court looks to "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies." *Burger King*, 471 U.S. at 477 (internal quotations omitted).

There will certainly be a burden on Heli-One Canada to litigate in Vermont, as the company is based in British Columbia, Canada.  This burden is mitigated, however, because "[w]hile there are always costs to defending a lawsuit, particularly in a foreign state, that burden is far less today than it once was due to advances in communications and transportation." *Irving v. Revera, Inc.*, No. 2:10-cv-153, 2011 WL 5329726, at *4 (D. Vt. Nov. 4, 2011).  Heli-One Canada has already taken the step of retaining Vermont counsel.  Although there is an added inconvenience because Heli-One Canada's witnesses are all in Canada, the burden on Heli-One Canada of litigating in Vermont is no greater than it would be for Plaintiff if the litigation took place in Canada. *See Gaffney v.*

*Shelton*, No. 2:11-cv-189, 2012 WL 368683, at *5 (D. Vt. Feb. 3, 2012); *Tom & Sally's*

*Handmade Chocolates, Inc. v. Gasworks, Inc.*, 977 F. Supp. 297, 301 (D. Vt. 1997).

With respect to Vermont's interest in having the dispute litigated here, the Court

recognizes that, although the subject matter of the dispute involves helicopter engines

that were never actually located in Vermont, "Vermont has some interest in adjudicating

a case involving injuries to . . . one of its residents." *Allen-Sleeper,* 2010 WL 3323660, at

*6.  Both Vermont and Plaintiff have an interest in the litigation taking place in Vermont,

as Plaintiff is a small Vermont corporation harmed by the activities of an out-of-state

actor that intentionally directed its activities into the state.

Turning next to Plaintiff's interest in convenient relief, Vermont is the most

convenient forum for Plaintiff.  Plaintiff has its principal place of business in Vermont,

and all of the witnesses and records necessary for litigating the case on its behalf are

present in Vermont, making an action in Vermont "a more convenient route to relief than

filing suit in another U.S. state," in Heli-One Canada's home country of Canada, or in

Heli-One Norway's home country of Norway.  *Irving,* 2011 WL 5329726, at *4.

In assessing whether litigation in Vermont would ensure the efficient

administration of justice, "courts generally consider where witnesses and evidence are

likely to be located." *Metropolitan Life*, 84 F.3d at 574.  Here, Plaintiff is a Vermont-

based company and all witnesses and evidence on its behalf are located in the State.

Defendants' witnesses, on the other hand, are split between Canada and Norway.

Norway, Canada, and Vermont appear to offer approximately equivalent efficiencies in

resolving the dispute.

Finally, the Court looks to the "common interests of the several states in promoting substantive social policies" to assess the reasonableness of the exercise of jurisdiction. *Metropolitan Life*, 84 F.3d at 575. Citing *Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County*, 480 U.S. 102, 115 (1987), Heli-One Canada argues that this Court should proceed with caution in cases involving foreign defendants, but has not argued, however, that any substantive policy of Canada might be undermined by this Court's assertion of jurisdiction. Neither has Plaintiff argued that any substantive policy of Vermont would be furthered by having this case heard here. Therefore, the Court finds that the empty scale tips evenly.

Reviewing the reasonableness factors, the second and third weigh in favor of this Court's exercise of jurisdiction, while the first, fourth, and fifth are in equipoise. On balance, the Court finds that the exercise of jurisdiction over Heli-One Canada in Vermont is reasonable in this case.

## Conclusion

For the reasons stated above, the Court finds that Defendant Heli-One Canada has adequate contacts with Vermont such that the exercise of specific personal jurisdiction would not offend due process (and is thus permitted under Vermont law). The Court further finds that exercising jurisdiction over Heli-One Canada would be reasonable in this case. Therefore, the Court DENIES Defendant Heli-One Canada's motion to dismiss for lack of personal jurisdiction.

Dated at Burlington, in the District of Vermont, this 28th day of September, 2012.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge